## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**CHARLES CHILDS,**

**Plaintiff,**

**vs.**                                                 Case No.   **11-cv-688-DRH-SCW**

**KIM BUTLER, Warden, Menard
Correctional Center,**

**Defendant[1].**

## MEMORANDUM AND ORDER

**HERNDON, Chief Judge:**

### I.   Introduction

This case is before the Court on a petition for writ of habeas corpus (Doc. 1).
Respondent has filed a Response (Docs. 14 & 15) and Amended Response (Doc.
19) to the petition.   Respondent later filed a supplemental Exhibit to the Response
(Doc. 28).   Petitioner has filed a Reply (Doc. 37).   Respondent has filed a
Sur-Reply (Doc. 41).   Based on the following, the Court **DENIES and DISMISSES**
petitioner's habeas petition (Doc. 1).

### II.   Background

**A.   Procedural Background**

#### 1.   Facts

---

[1] Although the petition originally listed David Rednour as warden, it has come to the Court's
attention that Kim Butler is the new warden of Menard Correctional Center and, as such, the Court
substitutes her for the Respondent.

Petitioner is currently incarcerated at Menard Correctional Center where he is serving a fifty-year prison term for one count of first degree knowing murder (Doc. 15 Ex. A).

Petitioner was charged in Peoria County with three counts: aggravated discharge of a firearm, first degree murder, and felony murder based on aggravated discharge of a firearm (*Id*.). The following facts regarding the acts that lead to petitioner's conviction on this charge is taken from the Order on Appeal from the Circuit Court of the 10th Judicial Circuit (*Id*.).

On August 19, 2000, petitioner was picked up by Marcus Risby and Joseph Griffin in their car. At the time, petitioner had a semi-automatic rifle with him which was wrapped in a sheet (Doc. 15 Ex. A at p. 2). Risby explained that he had an earlier encounter with Mitchell McGee and that he was going to "check" McGee, which Griffin testified at trial meant he was7 going to question him (*Id*. at pp. 2-3). Risby dropped Griffin off and Risby and petitioner went to find McGee, stopping at a house where Risby had previously seen McGee (*Id*. at p. 3). Risby and petitioner walked to the back of the house and Risby instructed petitioner to stay at the back of the house and then at the count of five to shoot at the house (*Id*.). Risby walked to the front of the house and petitioner shot his semi-automatic rifle into the house for ten seconds (*Id*.). One of the bullets ricocheted and hit Risby in the head, killing him (*Id*.).

At the trial, the owner of the house testified that she was at home with her two grandchildren when the shooting started and was awakened by the gunfire

(*Id.*).   Neither she nor her grandchildren were injured (*Id.*).   Forensic pathologists testified that the bullet that killed Risby had traveled some distance and ricocheted.   Petitioner's semi-automatic rifle fired 25 of 27 cartridges, which were found in the backyard (*Id.*).   A pistol was found near Risby with ten rounds that had not been fired.   The pistol had Risby's fingerprints on it (*Id.*).   At the trial, petitioner also testified and confirmed the facts but added that he thought the home was empty at the time that he fired into the house.   He testified that upon approaching the house, Risby did not see McGee's house and assumed he was not home.   He stated that he would not have fired into the house if he believed people were inside (*Id.*).   Petitioner was found guilty on all three counts and was sentenced to 50 years in prison on the first degree murder charge only.

### 2.   State Court Proceedings

#### a.   Direct Appeal

After petitioner's guilty verdict, petitioner appealed raising the following claims on direct appeal:

(1)   Petitioner was not guilty of first degree knowing murder because the prosecution failed to prove beyond a reasonable doubt that petitioner knew that the house was occupied when he fired his gun into it. Likewise, petitioner did not commit aggravated discharge of a firearm and was not guilty of felony murder;

(2)   Petitioner's conviction of felony murder was improperly premised on aggravated discharge of a firearm because that felony has no independent felonious intent and it is not a forcible felony under the felony murder statute;

(3)   The prosecution improperly shifted the burden of proof on the element concerning whether Petitioner knew the building was

occupied;

(4)     The trial court improperly considered three victim impact statements in violation of state law; and

(5)     The trial court abused its discretion in sentencing petitioner to a fifty-year prison term.

(Doc. 15 Ex. B).

The state appellate court affirmed Petitioner's verdict and sentence on October 17, 2011 (Doc. 15 Ex. A).   Petitioner filed a petitioner for leave to appeal (PLA) to the Illinois Supreme Court on claims (1) and (3) and the supreme court denied his PLA on February 6, 2002 (Doc. 15 Exs. E and F).

### b.     Post-Conviction Proceedings

On August 6, 2002, petitioner filed a post-conviction petitioner pursuant to 725 ILCS 5/122-1, et seq., in the Circuit Court of Peoria County (Doc. 15 Ex. G). In that petition, petitioner raised the following issues:

(1)     Trial counsel was ineffective in:

   a.     failing to investigate petitioner's claim that the Peoria Police Department denied him counsel by telling him that he did not need an attorney because he was being charged only with involuntary manslaughter;

   b.     failing to move to quash arrest in light of the denial of petitioner's right to counsel;

   c.     failing to investigate petitioner's claim that he was tricked by the police into giving a videotaped statement;

   d.     failing to move to suppress the videotaped statement;

   e.     failing to investigate petitioner's claim that he was intoxicated at the time of the offense;

      f.      failing to investigate whether petitioner's ability to recall details from the shooting precluded a defense of voluntary intoxication;

      g.      failing to advise petitioner that he could have asserted a voluntary intoxication defense;

      h.      failing to allow petitioner to testify about his consumption of liquor and marijuana shortly before the shooting;

      i.      failing to allow other witnesses to testify about petitioner's consumption of alcohol and marijuana prior to the shooting;

      j.      failing to present evidence from the coroner and pathologist showing that the victim had been drinking and ingesting drugs shortly before he was killed;

      k.      failing to call Detective Grow to testify about petitioner's statements, while in police custody, about his intoxication at the time of the offense; and

      l.      failing to object to the court's refusal to answer the jury's request to define the word "occupied' in the jury instructions.

(2)      appellate counsel on direct appeal was ineffective for failing to:

      a.      argue that the trial court erred when it failed to answer the jury's request to define the word "occupied"; and

      b.      argue that trial counsel was ineffective for failing to object to the trialcourt's refusal to answer the jury's request to define the word "occupied."

(Doc. 15 Ex. G)

The trial court denied the post-conviction petition on September 30, 2003 (Doc. 15 Ex. H).  Petitioner appealed to the state appellate court, raising two grounds: (1) he was entitled to an evidentiary hearing for claim that the Peoria Police Department deprived him of counsel; and (2) trial counsel was ineffective for

failing to file a motion to suppress his statement on that ground (Doc. 15 Exs. I, J, and K).   The state appellate court reversed the case on August 11, 2005 for an evidentiary hearing (Doc. 15 Ex. L).   The appellate court found that petitioner's petition as well as his affidavit alleged acts by the Peoria police department that, if proven, could have led to a successful motion to suppress (Doc. 15 Ex. Q at pp. 27-28).   The appellate court also found that if petitioner's videotaped statements were suppressed, the state's case would have been weakened (*Id.*).   The court, however, expressed no opinions on the merits of petitioner's claims and instead remanded the case back to the trial court for an evidentiary hearing (*Id.*).

The trial court held an evidentiary hearing at which the following testimony was heard (the following evidence comes from the appellate court's recitation of the evidentiary hearing):

At the hearing, Lillie Childs, petitioner's aunt, testified that on August 22, 1999 she received a call from petitioner in the late afternoon as it was "kind of dark" (Doc. 15 Ex. Q at p. 28).   Petitioner informed Lillie Childs that he was being questioned for murder and asked her to obtain counsel for him (*Id.*).   He informed her that he had not given the police a statement, but he did not indicate that he told the police he wanted an attorney (*Id.*).   After receiving his call, Lillie Childs went to petitioner's mother's house, Mary Childs, where she told her about the phone call from petitioner (*Id.*).   Mary Childs also testified that her sister came by the house on August 22, 1999 early in the afternoon (*Id.*).   She telephoned a couple of attorneys after Lillie left and on another day retained James Shadid to

represent petitioner (*Id*.).

Petitioner's wife also testified that she saw petitioner on August 20, 1999 and that he was drunk.  She saw him at approximately 10:00 p.m. and he was "sloppy drunk."  (*Id*. at p. 29).  She saw him again at approximately 1:00 a.m. and he was smoking marijuana and drinking (*Id*.).

Petitioner also testified at the evidentiary hearing.   He testified that he was arrested on August 22, 1999 at approximately 4:00 a.m. and was taken to the police station where he was questioned by Officer Javier Grow (*Id*).   Between 4:00 a.m. and 8:00 a.m. petitioner was questioned by Detective Jerry Wolland, who informed him of his *Miranda* rights, but petitioner did not provide him with a statement.   Instead, he told him he did not know of Risby's death (*Id.*).   He was then questioned by Grow at approximately 8:00 a.m.   Detective Pat Rabe was also present (*Id*.).   Petitioner was informed of Risby's death and he maintained that he did not know anything.   Petitioner testified that he spoke with them on and off for four and a half hours (*Id*.).   Rabe also read petitioner his *Miranda* rights and petitioner testified that he interrupted Rabe and stated he wanted an attorney (*Id*.).  He again requested an attorney when Rabe finished with the *Miranda* rights (*Id*.).  He also asked for a telephone, but according to petitioner it took three and a half hours for him to be allowed to use the phone (*Id*.).   The officers told him that he should "[get] this off [his] chest."   (*Id*.).   Petitioner testified that he told them he wanted to call an attorney and he then stated that they showed him a copy of the statute defining involuntary manslaughter.   They allegedly told him he did not

need an attorney because he could only be charged with involuntary manslaughter (*Id*. at pp. 29-30).   According to petitioner, Grow told him that he could talk to them and tell them it was an accident or they would make it look "like Charles Manson came in there" (*Id*. at p. 30).   Petitioner again asked for an attorney.

The detectives left and when Rabe returned he asked petitioner to take them to recover the gun, which he did (*Id*.).   After returning to the police station, the detectives again questioned petitioner.   Petitioner testified that he continued to ask for an attorney and refuse to give a statement (*Id*.).   He was finally allowed to call his aunt at 12:30 p.m.   Petitioner's aunt advised him not to speak with the police.   Petitioner, however, gave a videotaped statement without speaking to an attorney and stated he would go along with their story (*Id*.).   He testified that he only gave a statement because he was promised that he would only be charged with involuntary manslaughter.   He acknowledged that in the video he stated he had not been promised anything but stated that the detectives had told him not to give any surprises, which he assumed meant not to say he had been promised an involuntary manslaughter charge (*Id*.).   Officers Grow, Rabe, and Ball were present for the interview.

Sometime later, petitioner met with James Shadid, who spoke with him in preparation for trial.   Petitioner testified that he told Shadid that he had asked for an attorney during his questioning several times (*Id*. at pp. 30-31).   Shadid told him he would file a motion to suppress but later told petitioner he was not going to file one because he did not think the judge would believe him (*Id*. at p. 31).

Petitioner stated that when he asked about the motion to suppress, Shadid indicated that petitioner had not fully paid him and that he was indifferent to anything petitioner said (*Id*.).

Detective Grow also testified and acknowledged that he was one of the detectives that interviewed petitioner.   He stated that he first encountered petitioner at 6:10 a.m. and was present when Wolland gave petitioner his *Miranda* rights (*Id*.).   Petitioner stated he understood the rights and did not invoke any of them (*Id*.).   Petitioner maintained that while he had seen Risby earlier in the evening, he was not present at the time of the killing.   Grow was discharged from duty and Wolland continued the interview, but Grow testified that he returned to the police station between 12:30 p.m. and 1:00 p.m. and conducted a second interview with petitioner at 2:00 p.m.   Both Rabe and Bell were present. Petitioner was cooperative and was not promised anything in exchange for talking with the police (*Id*.).   He was also provided with food, drinks, and bathroom breaks (*Id*.).

Grow testified that his interview lasted from 2:00 p.m. until petitioner made his videotaped statement two hours later (*Id*. at pp. 31-32).   Petitioner did not request to speak with an attorney or invoke his right to remain silent, but instead made incriminating statements regarding his involvement in the shooting of Risby (*Id*. at p. 32).   Grow testified that petitioner's statements on the video were consistent with his statements given during the unrecorded interview.   Grow testified that he did not provide petitioner with statements to say on the video, nor

did he offer to charge him with involuntary manslaughter (*Id*.).   Grow did acknowledge that during the interview, an officer may have told petitioner it was best to get it off his chest.   He denied that anyone showed petitioner the manslaughter statute or informed him they didn't want any surprises on the video (*Id*.).

James Shadid also testified at the evidentiary hearing.   Shadid represented petitioner at trial.   Shadid testified that the theory of the defense, which petitioner did not object to, was that petitioner did not know anyone was in the house when he fired into it (*Id*.).   According to Shadid, petitioner's statements to him were consistent with what he stated in the video.   Shadid testified that he did investigate as to whether a motion to suppress would have merit, but he did not recall petitioner informing him that he had been forced to make the video statement, that he had been offered an involuntary manslaughter charge in exchange for his statement, or that petitioner had made repeated attempts to speak with counsel (*Id*.).   Shadid stated that he would recall if petitioner had informed him of these issues and he would have addressed those concerns, but petitioner did not and Shadid did not see a basis for the motion to suppress (*Id*. at pp. 32-33).   Shadid believed the videotaped confession supported the theory of defense (*Id*. at p. 33).

After a hearing, the trial court again denied petitioner's petition on November 7, 2008.   The trial court found no evidence to indicate that petitioner disagreed with the theory of defense and that the videotaped statement was

necessary for the defense to show he did not know the house was occupied (*Id.* at p. 33).   Based on the defense, petitioner was allowed to tender an involuntary manslaughter instruction over the state's objection (*Id.*).   The trial court also found that petitioner would not have been successful on a motion to suppress because the videotaped statement did not seem coerced and mirrored his trial testimony (*Id.*).   The trial court also found sufficient evidence to convict petitioner, including witness testimony that Risby and petitioner were together shortly before the shooting and discussed their intentions to go to the location of the shooting (*Id.*).

Petitioner again appealed, arguing that his trial counsel was ineffective for failing to file a motion to suppress his statements where police disregarded his request for counsel.   The state appellate court affirmed the trial court's findings on October 8, 2010 (Doc. 15 Ex. Q).   Likewise, the appellate court found that petitioner did not dispute his counsel's theory of defense and that the videotaped statement supported that theory.   The appellate court, thus, found the decision not to file a motion to suppress to be a tactical decision and found that the strategy was effective as petitioner was allowed to tender an involuntary manslaughter instruction (*Id.* at p. 35).   Petitioner filed a PLA with the Illinois Supreme Court raising the following claims:

(1)   trial counsel was ineffective for failing to file a motion to suppress Petitioner's statements on the ground that police disregard his request for counsel;

(2)   counsel's mishandling of the case should be reviewed under *United*

*States v. Cronic*, 466 U.S. 648 (1984);

(3)     the prosecution failed to call all material witnesses at the post-conviction evidentiary hearing; and

(4)     petitioner is actually innocent.

(Doc. 15 Ex. R).

The Supreme Court denied petitioner's PLA on March 14, 2011 (Doc. 15 Ex. S).

**B.     Habeas Petition**

On August 11, 2011, petitioner filed the present writ of habeas corpus pursuant to 28 U.S.C. § 2254.   Petitioner raised the following claims in his petition:

(1)     the evidence was insufficient to prove beyond a reasonable doubt that:

a.     Petitioner was guilty of first degree knowing murder; and

b.     Petitioner was guilty of felony murder predicated on aggravated discharge of a firearm

(2)     Trial counsel was ineffective for failing to move to suppress Petitioner's custodial statement; and

(3)     The prosecution improperly shifted the burden of proof on the question of whether Petitioner knew the building that he shot into was occupied.

### III.     <u>Analysis</u>

The Anti-Terrorism and Death Penalty Act of 1996 ("AEDPA") allows a district court to issue a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that he is in custody in

violation of the Constitution or laws or treaties of the United States."   28 U.S.C.§ 2554(a).   Before considering the merits of a habeas petition, a federal court must ensure that the petitioner has exhausted all available state remedies and fairly presented all of the claims in his habeas petition to the state courts.   *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004); *Spreitzer v. Schomig*, 219 F.3d 639, 644 (7th Cir. 2000).   Respondent concedes that petitioner has exhausted his state remedies but argues that two of his claims are procedurally defaulted.

**A.      Procedural Default**

Respondent argues that petitioner's claims concerning the sufficiency of the evidence supporting the felony murder count and prosecutorial misconduct are procedurally defaulted.   In order for a federal court to address the merits of a habeas petition, the petitioner must have exhausted his available remedies in state court and not have any of his claims procedurally defaulted.   28 U.S.C. § 2254(b)(1)(A); *Farrell v. Lane*, 939 F.2d 409, 410 (7th Cir. 1991).   These limitations allow state courts a fair opportunity to hear and act on a petitioner's claims.   *O'Sullivan v. Boerckel*, 526 U.S. 838, 844, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).

The procedural default doctrine prevents the federal court from reaching the merits of a petitioner's habeas petition when either "(1) that claim was presented to the state courts and the state-court ruling against the petitioner rests on adequate and independent state-law procedural grounds, or (2) the claim was not presented to the state courts and it is clear that those courts would now hold the claim

procedurally barred." *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004)(citing *Coleman v. Thompson*, 501 U.S. 722, 735 & n.1, 111 S.Ct. 2456, 115 L.Ed.2d 640 (1991)).   It is the first type of procedural default that respondent argues is at issue in this case.   Respondent argues that since the state court declined to reach petitioner's claims on these two issues, the decision was based on an independent state law ground.   A claim can be procedurally defaulted when a state court declines to address a petitioner's claims on the merits because the petitioner failed to meet a state court procedural requirement.   *Coleman v. Thompson*, 501 U.S. 722, 729-30, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).   This constitutes an independent and adequate state ground which bars petitioner's claim for habeas review.   *Id.*   However, a state ground is deemed independent only if the state court clearly and expressly stated in its opinion that its judgment was based on a state procedural bar.   *Miranda v. Leibach*, 394 F.3d 984, 992 (7th Cir. 2005); *Gray v. Hardy*, 598 F.3d 324, 329 (7th Cir. 2010) (noting that the state court clearly and expressly relied on the state doctrine of waiver to decide petitioner's claims).   A state court's decision to not reach the merits of a claim based on the doctrine of waiver constitutes an independent and adequate state ground.   *Rodriguez v. McAdory*, 318 f.3d 733, 735 (7th Cir. 2003); *Wright v. Walls*, 288 F.3d 937, 947 (7th Cir. 2002); Gray, 590 F.3d at 329.

   Here, respondent argues that two of petitioner's claims are procedurally defaulted.   Respondent argues that the state appellate court's decision not to reach these two claims was due to the fact that there was no judgment on either

conviction related to petitioner's claims, namely the aggravated battery with a firearm and felony murder counts.   Respondent points out that it is well settled law in Illinois that when there is one murder victim a sentence may be imposed on the most serious count of murder if the jury returns verdicts on more than one count.  *People v. Cortes*, 181 Ill.2d 249, 282, 692 N.E.2d 1129 (1998).   Thus, respondent argues, the appellate court's decision not to reach the merits constituted a procedurally default because the state court could not reach petitioner's claims because no judgment had been entered on those claims. *People v. Matzke*, 102 Ill. App. 3d 905, 908-9, 430 N.E.2d 353 (1st Dist. 1981).

However, in order for the procedural default to take affect the court must have "clearly and expressly stated" that its judgment was based on a state procedural bar.   This did not occur in this case.   The state court merely stated that "because we affirm defendant's conviction and sentence for knowing murder, we need not reach these issues, and we decline to address them." (Doc. 15 Ex. A at p.7).   Nothing in the court's opinion indicates, as respondent alleges, that the court did not reach these claims because there was no judgment of conviction on the other two counts.   It is not enough that the procedural bar existed and the state court could have relied upon that bar, the court must have actually "relied on the procedural bar as an independent basis for its deposition of the case." *Caldwell v. Mississippi*, 472 U.S. 320, 327, 105 S.Ct. 2633, 85 L.Ed.2d 231 (1985); *see also Richardson v. Lemke*, 745 F.3d 258, 269 (7th Cir. 2014).   The Seventh Circuit has stated that ambiguity in a state opinion does not favor the

government and the court may review a petitioner's claims "unless the state court's opinion contains a 'plain statement' that its decision rests on state grounds." *Richardson*, 745 F.3d at 269.   Here, the state appellate court did not spell out that their decision was based on the state procedural bar that respondent suggests. There is simply nothing in the opinion to plainly state that their decision not to reach the merits rested on the procedural basis respondent cites.   Thus, the independent state procedural bar is not clear from the face of the opinion and the Court does not find that petitioner's claims are procedurally defaulted.   *Coleman*, 501 U.S. at 734-35, 111 S.Ct. 2546, 115 L.Ed.2d 640.

Although the procedural bar is not clear from the record and petitioner's two claims, related to the aggravated discharge of a firearm and felony murder based on aggravated discharge counts, are not procedurally defaulted, the Court agrees with respondent that the facts in the record indicate that judgment was not entered on the other two counts against petitioner.   The judgment from the Circuit Court indicates that while petitioner was found guilty on all three counts, the trial court only accepted the guilty verdict regarding the First Degree Murder Count, Count 2 (See Doc. 15 Ex. B at pp. 58-60).   Petitioner's other two claims, aggravated discharge of a firearm and felony murder based on aggravated discharge of a firearm, accordingly, were not accepted by the trial court.   It is not clear if the two counts were specifically vacated as contemplated in the *Cortes* case, *see Cortes*, 181 Ill.2d at 282, 692 N.E.2d 1129, but petitioner was only convicted on the felony murder count (*Id*. at p. 60).   Respondent's argument that the

appellate court could not have reached the merits of petitioner's claims as to the aggravated discharge and felony murder because no judgment was entered on those claims appears to be correct.   Thus, the Court finds that if it does not find habeas relief warranted as to petitioner's claims regarding his knowing murder charge, it need not address the claims related to the aggravated discharge of a firearm and felony murder as judgment was not entered on those claims.

**B.   Merits**

Turning to the merits of petitioner's petition, petitioner's claims are subject to the provisions of the Antiterrorism and Effective Death Penalty Act, known as AEDPA.   "The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."   *Bell v. Cone*, 535 U.S. 685, 693, 122 S.Ct. 1843 (2002).

Habeas is not another round of appellate review.   Federal courts do not review state court determinations of state law questions on habeas review.   *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475 (1991); *Bloyer v. Peters*, 5 F.3d 1093, 1098 (7th Cir. 1993).   § 2254(d) restricts habeas relief to cases wherein the state court determination "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding."

The issue for this court on habeas is whether the state court's decision was "contrary to" or constituted an "unreasonable application of" Supreme Court precedent.   28 U.S.C. §2254(d)(1).   "Avoiding these pitfalls does not require citation to [Supreme Court] cases – indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."   *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362 (2002) (emphasis in original).   The Supreme Court most recently announced that in reviewing a habeas petition, the reviewing court must decide if "fairminded jurists could disagree" that a state court decision conflicts with Supreme Court precedent.   *See Harrington v. Richter*, -- U.S.--, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011); *Cullen v. Pinbolster*, --U.S.--, 131 S.Ct. 1388, 1402, 179 L.Ed.2d 557(2011).

The Seventh Circuit has noted that the scope of federal review of state court decisions on habeas is "strictly limited" by 28 U.S.C. § 2254(d)(1).   *Jackson v. Frank*, 348 F.3d 658, 661 (7th Cri. 2003).   The unreasonable application standard is "a difficult standard to meet."   *Id*. at 662.   Even an incorrect or erroneous application of the federal precedent will not justify habeas relief; rather, the state court application must be "something like lying well outside the boundaries of permissible differences of opinion."   *Id*. at 662 (internal citation omitted).

   ***1.***  ***Sufficiency of the Evidence***

Petitioner first argues that the evidence presented at trial was insufficient to support the finding that petitioner acted with knowledge when he shot into the house and killed Risby.   Specifically, petitioner argues that the circumstantial evidence presented only showed that the house was occupied in general, not specifically at the time of the shooting, and thus the state appellate court's finding that petitioner knew that the house was occupied at the time of the shooting was an unreasonable factual determination based on the evidence.

The federal rule for insufficient evidence is found in the Supreme Court case of *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979).   The case holds that a conviction can only be overturned if "after viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the elements of the crime beyond a reasonable doubt."   *Id*. at 319.   Where, as here, petitioner argues that the state court's finding was an unreasonable factual determination, habeas relief can be granted if petitioner demonstrates that the state appellate court's factual findings "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   § 2254(d)(2); *Harrington v. Richter*, --U.S.--, 131 S.Ct. 770, 785 (2011).   In reviewing petitioner's claims, the district court reviews "the decision of the last state court that substantially adjudicated" the claim, in this case, the state appellate court.   *Gonzales v. Mize*, 565 F.3d 373, 379 (7th Cir. 2009).   A petitioner cannot succeed on a factual challenge unless the factual determination made by the court was an "unreasonable error", a standard

governed by §2254(e)(1).  *Morgan v. Hardy*, 662 F.3d 790, 790 (7th Cir. 2011)

(citing *Ward v. Sternes*, 334 F.3d 696, 703-04 (7th Cir. 2003)); *Burt v. Titlow*,

--U.S.--, 134 S.Ct. 10, 15 (2013).  "If a petitioner shows that the state court

determined an underlying factual issue against the clear and convincing weight of

the evidence, the petitioner 'has gone a long way towards proving that it committed

an unreasonable error.'"  *Id.*  "A state court decision that rests upon a

determination of fact that lies against the clear weight of the evidence is, by

definition, a decision so adequately supported by the record as to be arbitrary and

therefore objectively unreasonable."  *Id.* (internal citations omitted).  The

standard is a stringent one and the state court's findings cannot be deemed

unreasonable simply because the federal court disagrees with them.  *Collins v.

Gaetz*, 612 F.3d 574, 586 n. 5 (7th Cir. 2010); *Wood v. Allen*, --U.S.--, 130 S.Ct.

841, 849, 175 L.Ed.2d 738 (2010).

Here, the Court finds that the state appellate court's finding that there was

sufficient evidence to show that petitioner had knowledge that the house was

occupied at the time that he shot into the house and killed Risby was not

unreasonable.  In determining that petitioner had the requisite knowledge, the

appellate court found that:

> the record contains ample facts which support the jury's
> finding that the defendant committed knowing murder.  Defendant
> and Risby were looking for McGee at approximately 4:00 a.m. and
> went to a house where Risby had previously seen him.  While Risby
> did not think McGee was there at the time, the house showed several
> signs that it was occupied such as curtains in the windows, trash cans
> and a pet's water dish.  Defendant counted to five while Risby

proceeded to the front of the house and fired his semi-automatic rifle at the back of the house for approximately ten seconds…

The evidence also showed that defendant's rifle propelled the bullets with such force that bullets entered the home through the walls and continued through a refrigerator and microwave. The record in this case supports a finding that the defendant knew with reasonable certainty that his actions would cause death or great bodily harm.

(Doc. 15 Ex. A at pp. 5-6).

Petitioner argues that the evidence presented only showed that the home was occupied in general and not that petitioner knew the home was occupied at the time the shooting occurred. Petitioner points out that the only evidence listed by the appellate court that shows that a person would have been home at the time of the shooting was the time of the shooting itself, 4:00 a.m. and that timing, by itself, is insufficient to show knowing murder. *See People Tackett*, 150 Ill.App.3d 406,420, 501 N.E.2d 891 (1st Dist. 1986)(time of night and fact that car was in the garage and defendants brought string to tie up people in the house); *People v. Austin*, 123 Ill.App.3d 788, 794, 463 N.E.2d 444 (2nd District 1984)(time of night and the fact that noise and lights were seen in apartment inferred knowledge that apartment was occupied); *People v. Redisi*, 172 Ill.App.3d 1003, 1011, 527 N.E.2d 684 (2nd Dist. 1988) (can infer knowledge of presence in the building when lights and television were on and occupant was moving around the house from room to room); *People v. Quiver*, 205 Ill.App.3d 1067, 1072, 563 N.E.2d 991 (1st Dist. 1990) (time of night as well as lights and sound from television).

Knowledge, is by its nature, proven by circumstantial evidence, and as such

the "State   must present sufficient evidence from which an inference of knowledge can be made." *Austin*, 123 Ill.App.3d at 794, 463 N.E.2d 444.   Petitioner's argument that there was inadequate evidence of knowledge, however, ignores the fact that the appellate court found that "[Petitioner] counted to five while Risby proceeded to the front of the house and [Petitioner then] fired his semi-automatic rifle at the back of the house for approximately ten seconds." (Doc. 15 Ex. Q at p. 5).   Although the appellate court's finding on this point was not fleshed out as clearly as it could have been, the evidence at trial was that when Petitioner and Risby approached the house, Risby instructed petitioner to wait five seconds until Risby reached the front of the house to begin firing into the house.   This instruction by Risby suggests that petitioner was aware that the home was occupied at the time of the shooting as a person who believed the house was empty would not wait five seconds to shoot at the house from the back while his accomplice went to the front of the house.   A reasonable jury could infer that this strategy was employed so that Risby could cover the front of the house if the occupants tried to escape out the front door when the shooting through the back of the house occurred.   There would be little reason to wait and surround the house if it was believed that the house was empty and no other explanation was offered at trial for this decision.   This evidence, along with the early morning time of the incident and the other evidence that the appellate court pointed to, was sufficient evidence to infer that petitioner knew that the house was occupied when he shot into the house.   *See Austin*, 123 Ill.App.3d at 794, 463 N.E.2d 444 (Defendants

bringing firearms to the apartment, kicking open the door, and immediately firing suggested that the defendants believed that the apartment was occupied). Accordingly, the Court finds that the state appellate court's finding that there was ample evidence to suggest that petitioner knew that the home was occupied at the time of the shooting was not unreasonable and its rejection of petitioner's sufficiency of the evidence claim was reasonable.   Thus, the Court **DENIES** Petitioner's habeas petition on this point.

### 2.      *Ineffective Assistance of Counsel*

Petitioner next argues that his trial counsel was ineffective for failing to pursue a  motion to suppress petitioner's videotaped statements and that the state appellate court's finding otherwise was unreasonable.   Whether counsel was ineffective is governed by *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).   The Seventh Circuit has emphasized that, when considering a claim of ineffective assistance of counsel on habeas cases, federal courts must honor any "reasonable" state court decision; "only a clear error in applying Strickland's standard would support a writ of habeas corpus."   *Holman v. Gilmore*, 126 F.3d 876, 882 (7th Cir. 1997).   Both the *Strickland* standard and a review under § 2254 are highly differential on their own, but "when the two apply in tandem, review is 'doubly' so."   *Harrington, --*U.S.--, 131 S.Ct. at 788, *Cullen v. Pinholster, --U.S.--*, 131 S.Ct. 1388, 1403, 179 L.Ed.2d 557 (2011) (counsel strongly presumed to have rendered adequate assistance and review of assistance under habeas is "doubly deferential."); *McNary v. Lemke*, 708 F.3d 905, 914 (7th

Cir. 2013) (quoting *Cullen*, 131 S.Ct. at 1398, 179, L.Ed.2d 557; *Knowles v. Mirzayance*, 556 U.S. 111, 123, 129 S.Ct. 1411, 173 L.Ed.2d 251 (2009)); *Burt v. Titlow*, --U.S.--, 134 S.Ct. 10, 13 (2013).   *Strickland* requires that a petitioner on an ineffective assistance of counsel claim prove (1) that counsel's performance "fell below an objective standard of reasonableness" ("the performance prong"), and (2) "that the deficient performance prejudiced the defense" ("the prejudice prong"). *Strickland*, 466 U.S. at 688, 692, 104 S.Ct. 2052, 80 L.Ed.2d 674.   To establish prejudice, a petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Morgan v. Hardy*, 662 F.3d 790, 802 (7th Cir. 2011)(quoting *Strickland*, 466 U.S. at 693, 104 S.Ct. 2052, 80 L.Ed.2d 674); *Newman v. Harrington*, Case No. 12-3725, --F.3d--, 2013 WL 4033893 (7th Cir. Aug. 9, 2013). In order for the writ to issue, a habeas petitioner must satisfy both prongs of the *Strickland* analysis.   However, there is no mandatory order for the analysis, and a habeas court does not need "to address both components of the inquiry if the defendant makes an insufficient showing on one."   *Id*. at 697, 104 S.Ct. 2052, 80 L.Ed.2d 674.

Petitioner argues that his trial counsel's decision not to file a motion to suppress was not sound trial strategy and that his decision, instead, to pursue a defense that petitioner did not know the home was occupied, which petitioner's videotaped confession supported, was the second-best trial strategy.   Petitioner argues that counsel should have attempted to suppress his videotaped confession

and that had he filed a motion to suppress and succeeded, the state's case against Petitioner would have been weakened as Petitioner would have had no reason to testify and the state would have had to prove its case with only circumstantial evidence.

Here, however, the Court finds that the appellate court properly applied the principles set forth in *Strickland* and that the appellate court's finding that counsel was not ineffective was reasonable.   The appellate aourt pointed to *Strickland* in setting forth the standard by which it judges the trial counsel's performance. Specifically, the appellate court noted that under the objective prong of S*trickland*, the defendant must overcome the strong presumption that the challenged action was not the result of incompetence, but rather, the result of sound trial strategy. *People v. Cokley*, 347 Ill.App.3d 292, 300, 807 N.E.2d 568 (1st Dist. 2004), *overruled on other grounds*, *People v. Cokley*, 211 Ill.2d 589, 817 N.E.2d 534 (2004) (citing *Strickland*, 466 U.S. at 688, 104 S.Ct . 2052, 80 L.Ed.2d 674). Further, the court noted that with respect to the result prong, the defendant had to show a reasonable probability both that the motion to suppress would have been granted and the outcome of the trial could have been different had the evidence been suppressed. *People v. Orange*, 168 Ill.2d 138, 153-54, 659 N.E.2d 935 (1995).   This is the same standard employed by the Seventh Circuit in such instances.   *See Poole v. Randolph*, 570 F.3d 922, 934, 943 (7th Cir. 2009).

Further, the Court finds that the appellate court's determination, that counsel's decision not to pursue a motion to suppress was sound trial strategy, to

be reasonable.   The Court presumes that "counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."   *Pole*, 570 F.3d at 941 (citing *Thompson v. Battaglia*, 458 F.3d 614, 620 (7th Cir. 2006)).   Here, the appellate court reviewed the evidentiary hearing conducted by the trial court and found that trial counsel's decision not to pursue a motion to suppress was sound defense strategy.   The testimony from trial counsel was that he did not recall petitioner telling him that he requested to speak with an attorney or that the investigators had promised him anything in return for his statement.   Further, although petitioner testified that he did ask for an attorney, other testimony, including that of Detective Javier Growe and Petitioner's counsel, supported the finding that Petitioner was not coerced, and such credibility determinations made by the state court are presumed correct absent "clear and convincing evidence" which petitioner has not presented.   28 U.S.C. § 2254(e)(1). Based on his discussions with petitioner and his review of the discovery, he did not see a reason to pursue a motion to suppress.   Instead, he chose a theory of defense, which counsel testified petitioner did not object to, which argued that petitioner did not know anyone was home when he fired into the home, killing Risby.   Trial counsel found petitioner's testimony consistent with his videotaped statement, which supported the position that petitioner believed the home was unoccupied.   The taped confession was necessary to that defense.   Counsel's strategy was also successful to a point, as he was able to obtain an involuntary manslaughter conviction over the state's objection.   Given the testimony from

counsel at the evidentiary hearing, it was not unreasonable for the appellate court to find that the defense strategy presented by counsel was bolstered by the videotaped confession and counsel's decision not to pursue a motion to suppress given his knowledge about the circumstances surrounding the confession was a sound tactical decision.   Thus, the appellate court reasonably found that petitioner could not overcome the first prong of the *Strickland* test requiring him to demonstrate that his counsel's actions were the result of incompetence rather than sound trial strategy.   Petitioner's habeas petition on the ineffectiveness of his trial counsel is, thus, **DENIED**.

### 3.    *Remaining Claims*

As the Court finds that petitioner is not entitled to habeas relief on his first degree murder charge, the Court need not address petitioner's claims related to his other counts, aggravated discharge of a firearm and felony murder based on aggravated discharge, as the trial court only accepted the guilty verdict on the first degree murder charge.

### C.    Certificate of Appealability

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2254 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."   A petitioner cannot appeal a dismissal of his habeas petition unless he obtains a Certificate of Appealability.   See 28 U.S.C. § 2253(c)(1).   A Certificate of Appealability may only be issued where the petitioner "has made a substantial showing of the denial of a

constitutional right." 28 U.S.C. § 2253(c)(2); *Evans v. Circuit Ct. of Cook Cnty., Ill.*, 569 F.3d 665, 667 (7th Cir. 2009). This requirement has been interpreted by the Supreme Court to mean that an applicant must show that "reasonable jurists could debate whether...the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Mill-el v. Cockrell*, 537 U.S. 322, 336, 123 S.Ct. 1029 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)). While a petitioner need not show that his appeal will succeed, he must show "something more than the absence of frivolity" or the existence of mere "good faith" on his part. *Id.* at 338 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983)). Here, the undersigned finds no basis for a determination that its decision to dismiss petitioner's claims was debatable or incorrect. His claims were denied as meritless. Accordingly, the Court **DENIES** petitioner a Certificate of Appealability in this case.

### IV.   Conclusion

Accordingly, the Court **DENIES** petitioner's § 2254 habeas petition as meritless and **DISMISSES** the petition with prejudice. The Court further **DENIES** petitioner a Certificate of Appealability. Judgment shall enter accordingly.

**IT IS SO ORDERED**.
Signed this 16th day of June, 2014.

Digitally signed by
David R. Herndon
Date: 2014.06.16
14:54:11 -05'00'

**Chief Judge**
**U.S. District Court**